UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CLARE E. DEBLAAY,
AMBER L. KOZLOSKE, and
BRITTANY M. SAMP,

      Plaintiffs,

                                                                                   Case Number 05-10264-BC
v.                                                                    Honorable Thomas L. Ludington

ROBERT SHANE SMITH

      Defendant.
_____/

**CORRECTED ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AS TO COUNT TWO OF THE PLAINTIFFS' AMENDED COMPLAINT**

      The plaintiffs filed this action on October 4, 2005 alleging that the defendant, Michigan State Police Trooper Shane Smith, violated their constitutional rights when he entered plaintiff DeBlaay's home, subjected the plaintiffs to an unlawful clothing search, and engaged them as undercover informants in an attempt to infiltrate drug sales in the greater Alpena, Michigan community. Thereafter, the defendant moved for summary judgment as to all five counts of the plaintiff's amended complaint.

      The Court heard oral argument on October 16, 2006 and issued an order on October 19, 2006 summarizing its ruling from the bench granting in part and denying in part the defendant's motion for summary judgment. In its ruling, the Court resolved all issues save for one: whether the plaintiffs had established a viable state-created danger claim under the Fourteenth Amendment. The Court took that count under advisement pending supplemental briefing:

> Finally, the Court took under advisement the question of the viability of the plaintiffs' state-created-danger theory under the Fourteenth Amendment. The Court directed the parties to furnish additional briefing on the issue of the legal authority of the defendant, a uniformed state police trooper, to solicit the plaintiffs to commit

      crimes as informants in exchange for reducing or dismissing criminal offenses. The Court will make a ruling with respect to this count following receipt of the additional information and due consideration.

*See* Dkt # 23, Order (Oct. 19, 2006).

      The parties have complied with the Court's directive, and the matter is ready for disposition. The Court has considered the supplemental briefs along with evidence presented during the hearing and now finds that the plaintiffs have demonstrated litigatable issues of fact with respect to their state-created-danger theory. The Court therefore will deny the defendant motion for summary judgment as it relates to count two of the plaintiffs' amended complaint.

I.

      In his brief, the defendant concedes that he could locate no legal authority or state police policy that would permit him to solicit the plaintiffs to commit criminal acts and offer them immunity from prosecution. Smith appears to believe that his conduct is justified because engaging confidential informants is not expressly prohibited by state law and, in fact, is a time-honored, constitutionally-sanctioned tradition. He argues:

> [U]sing confidential informants (CIs) is an ancient and honored tradition in law enforcement, with Supreme Court imprimatur. CIs typically agree to work with police in the hope (but no promise) of leniency regarding a pending criminal charge. The use of CIs does not constitute a constitutional violation.
> . . .
> Even if the Plaintiffs committed crimes while cooperating with the police, and assuming the local prosecutor was inclined to issue against the Plaintiffs for those crimes (which is highly unlikely), and absent a formal grant of immunity under MCL 780.701 *et seq*. Plaintiffs would likely have informal "equitable" immunity . . . .

Def.'s Supp. Br. at 2-3.

      The plaintiffs, however, point to state police regulations that would seem to prohibit solicitation of criminal acts and promises of immunity or reduced liability. A document titled

"Official Order No." dated May 5, 2003 provides, in relevant part

> Members shall not initiate reduction or dismissal of valid traffic or nontraffic offenses. Charge reductions or dismissal recommendations in traffic or non-traffic cases shall be made only at the request of the Court or prosecuting official responsible for the case. Members may discuss any factors of which they are aware, which may affect the disposition of a charge with the prosecuting official so long as they refrain from advocating the reduction or dismissal of a valid charge.

Pl.'s Supp. Br. Ex. B., Official Order. Thus, there appears to be no legal authority for the officer's conduct in soliciting the plaintiffs' assistance in the drug investigation.

II.

In adjudicating a motion for summary judgment under Federal Rule of Civil Procedure 56, this Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine whether a genuine issue of material fact is in dispute or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001), and "[m]ateriality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000).

The Sixth Circuit explained in *McQueen v. Beecher Community Schools*, 433 F.3d 460 (6th Cir. 2006) that the Fourteenth Amendment recognizes a so-called "state created danger," a "theory . . . predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Id.* at 464. The court of appeals further wrote:

> The state-created-danger doctrine has its roots in *DeShaney* [*v. Winnebago County DSS*, 489 U.S. 189, 109 (1989)]. There, the Supreme Court instructed that even in the face of "undeniably tragic" and "calamitous" circumstances-as when young Joshua DeShaney was severely beaten and permanently injured by his father after the state failed to remove the boy from his father's custody – "as a general matter, a

> State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. But the Court acknowledged that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals, explicitly recognizing that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The Court also seemed to leave the door open for another set of "limited circumstances" that would give rise to a state's affirmative duty to protect when it noted that while the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them.

*Id.* at 462-43 (internal citations and quotations omitted).

The Sixth Circuit has not specifically defined what an affirmative act is, but held in *McQueen* that leaving children unsupervised does not rise to a constitutional violation. *Id* at 466. Nonetheless, the court described the cases in which an affirmative act was assumed to have taken place:

> In *Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir.2002), where the police escalated the confrontation in an armed stand-off, we did not explicitly apply the *Kallstrom* framework, but we assumed that the affirmative-act-plus-risk-creation requirement had been met. *See id.* at 510 (noting that "it is not enough to show a causal connection between state action and an act of private violence"). The case was decided on the state culpability issue. In *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483 (6th Cir.2002), another case that did not explicitly apply the *Kallstrom* framework, we "assume[d], without deciding, that the [corrections department's and officers'] actions and omissions increased the danger of [the plaintiff's] being harmed by an inmate at the prison." *Id.* at 493.

*Id.* at 465 n. 5. The court further explained that it has only held explicitly in one case that the affirmative act standard had been met. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998). In *Kallstrom*, the city "releas[ed] private information from undercover officers' personnel files to defense counsel representing violent gang members whom the officers had investigated." *Ibid.* (internal citation and quotation marks omitted).

The court also noted the instances in which it had found no affirmative act.

-4-

> In contrast, on numerous occasions we have rejected claims because the challenged conduct either was not an affirmative act at all or did not create or increase the risk of private violence to the plaintiff. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728-29 (6th Cir. 2005) (city's and officials' creation of a street and the management of traffic conditions); *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (police transport of the plaintiff from a place of greater danger-the shoulder of a highway-to a place of lesser danger-a convenience store parking lot); *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003) (police return of the plaintiff back to the home of the man who subsequently raped her, which was where police initially had found her and where she asked to be returned); *Jones v. Union County*, 296 F.3d 417, 430-31 (6th Cir. 2002) (police failure to serve an ex parte order of protection in a timely manner); *Weeks v. Portage County Exec. Offices*, 235 F.3d 275, 278-79 (6th Cir. 2000) (police failure to seek medical attention for already-injured plaintiff); *Summar v. Bennett*, 157 F.3d 1054, 1059 n. 2 (6th Cir. 1998) (police disclosure of plaintiff confidential informant's identity to district attorney for inclusion in indictment of third party). In another case we did not explicitly apply the *Kallstrom* framework but made clear that the act did not create or increase the risk. *Sheets v. Mullins*, 287 F.3d 581, 588-89 (6th Cir.2002) (the private violence was "too remote from [the] allegedly wrongful acts [police failure to arrest or more thoroughly investigate the eventual attacker] to support a finding of proximate cause"). Finally, we held in two pre- *Kallstrom* cases that the act did not create or increase the risk. *Sargi v. Kent City Bd. of Educ*., 70 F.3d 907, 911 (6th Cir. 1995) (school board's and officials' various failures to provide for adequate response to a child's medical emergency on a school bus); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065-66 (6th Cir. 1994) (police failure to rescue and lies concerning the investigation).

*Ibid.*

The *McQueen* court reasoned that in addition to showing an affirmative act, a plaintiff claiming a state-created risk must demonstrate a "special danger." *Id.* at 467. Such a danger "exists where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.* at 468. The court explained:

> As with the affirmative act requirement, we have set a high bar for the special danger requirement. In *Kallstrom*, we held that the second requirement was satisfied where the City's release of private information from undercover officers' personnel files "placed the personal safety of the officers and their family members, as distinguished from the public at large, in serious jeopardy." 136 F.3d at 1067. But in several other cases-both before and after we fashioned the *Kallstrom* framework-we have rejected claims of a special danger. *See Schroder*, 412 F.3d at 729 (city's and officials' creation of a street and the management of traffic conditions posed a general traffic risk to pedestrians and other automobiles); *Union County*, 296 F.3d at 431 (failure

-5-

to serve an ex parte order of protection in a timely manner); *Jones v. City of Carlisle*, 3 F.3d 945, 950 (6th Cir. 1993) (city's allowing an epileptic to maintain a driver's license posed a danger to any citizen on the streets); *Janan v. Trammell*, 785 F.2d 557, 560 (6th Cir. 1986) (release of a parolee only endangered plaintiff as a member of the public at large).

*Ibid.*

Finally, a plaintiff

"[M]ust demonstrate that the state acted with the requisite culpability to establish a substantive due process violation under the Fourteenth Amendment." *Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir. 2002). The government's conduct must be "so 'egregious' that it can be said to be 'arbitrary in the constitutional sense,' " but the standard is " 'no calibrated yard stick.' " *Id*. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "The guiding principle seems to be that a deliberate-indifference standard is appropriate in 'settings [that] provide the opportunity for reflection and unhurried judgments,' but that a higher bar may be necessary when opportunities for reasoned deliberation are not present." *Bukowski*, 326 F.3d at 710 (quoting *Ewolski*, 287 F.3d at 511 n. 5).

*Ibid.*

Here, viewing the facts in the light most favorable to the plaintiff as the Court must at this stage in the litigation, there is evidence of all material elements of a state-created danger claim. First, Smith, acting under the color of law, engaged in affirmative acts: under the ruse of the plaintiffs "working off" their tickets, he told them to drive to Alpena, knowing that plaintiff Brittany Samp, the driver, likely was legally intoxicated, at speeds, she has testified, of ninety miles per hour, so that Samp and plaintiff Amber Kozlowske could attempt to buy marijuana from men at a motel. *See* DeBlaay dep. at 168-169  (testifying that in response to Samp's request that she not drive because of her intoxication, Smith "said it had been long enough. Eat a piece of bread or something;" and further that Smith ordered them "to keep up with me. If I go 70, you go 70, just stay on my tail"); *see also* DeBlaay dep. at 170"were going faster than 70"); *see also* Samp dep. at 20 (testifying she drove as fast as ninety mile per hour); Kozlowske dep. at 20 (estimating that they were traveling at

approximately eighty miles per hour); DeBlaay dep. at 168 (testifying Smith described the plan: "Brittany was going to drive and we were going to follow him [to the hotel in Alpena, some twenty minutes from DeBlaay's residence] because he was going off duty an 11 and us three can't fit in his car, he has a jeep with a dog, one seat") *Id.* at 168.

In addition, there is no evidence that the plaintiffs had any training in the work they were supposed to undertake or, based on the supplemental briefs filed with the Court, that Smith had the authority to engage them as undercover officers. Further, the plaintiffs actually did attempt to buy drugs with the facilitation of another state police trooper, Andrew Ambrose, as arranged by Smith. Samp and Kozlowske entered into the apartment of suspected drug dealers without any plan for extrication or support, and, if believed, were forced to smoke marijuana so as not to draw suspicion upon themselves. *See* Samp. dep. at 220-245.

Second, the above evidence also satisfies the second element, a "special danger where the state's actions place the victim specifically at risk, as distinguished from as risk that affects the public at large." *McQueen*, 443 F.3d at 467. Plainly, driving intoxicated at high speeds as ordered by a police officer acting under the color of law is a risk borne primarily by the driver and passengers.

Third, the same evidence also lends an inference of deliberate indifference, the third prong of the inquiry. *Ibid.* Among other things, Smith knew, accepting the plaintiff's statement of the facts for purposes of analysis, of the plaintiff's intoxication and the lack of training and chose to send the plaintiffs on the road and into an undercover operation all under the ruse that the plaintiffs would work off an earlier violation. Finally, there is no evidence that Smith was under pressure to make a hurried decision. *See ibid.* (noting that the threshold is lower where the state actor has a chance

"for reflection and unhurried judgments").

### III.

Viewing the facts in the light most favorable to the plaintiffs, the Court concludes that a jury could determine that Smith's actions constituted a state-created danger under the Fourteenth Amendment.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt #s 14, 16] with respect to the count two of the plaintiffs' amended complaint is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 5, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 5, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

---